759 P.2d 1017

Catarino D. **HERNANDEZ** and Isaura
G. Hernandez,
Plaintiffs–Counter–Defendants–Appellants,

v.

Alfonso H. **CABRERA** and Jessie L. Cabrera, his wife,
Defendants–Counter–Plaintiffs–Appellees.

No. 9760.

Court of Appeals of New Mexico.

July 12, 1988.

**436**

Manuel I. Arrieta, Weinbrenner, Richards, Paulowsky & Sandenaw, P.A., Las Cruces, for plaintiffs-counter-defendants-appellants.

T.K. Campbell, Campbell, Reeves & Chavez, P.A., Las Cruces, for defendants-counter-plaintiffs-appellees.

## OPINION

MINZNER, Judge.

Appellant Catarino Hernandez appeals from a judgment quieting title to a 0.2678–acre tract of land, located within the city of Las Cruces, New Mexico, in favor of appellees Alfonso and Jessie Cabrera. He appeals in his own right and as survivor of Isaura Hernandez, who died while this appeal was pending. Appellant is Alfonso Cabrera's uncle and resides on an adjoining tract. The tract of land at issue is a fenced lot upon which a dwelling is located.

Appellees claim title to the property as joint tenants under a deed from Rosalia Amada Cabrera (Rosalia), Alfonso Cabrera's mother and appellant's sister. Rosalia entered into possession of the property under a warranty deed from her mother, Antonia Hernandez (Antonia), dated January 20, 1951, and resided there until her death in 1983. In 1976, she executed a warranty deed in favor of appellees, reserving a life estate. Upon Rosalia's death, appelles assumed possession of the property, made improvements, and rented the house.

Appellant claims title to the subject property under a quitclaim deed from Georgia S. Jones (Jones) dated July 19, 1950. Jones' title derived from a tax deed. The record indicates that Antonia attempted to convey an interest she had inherited from her husband by deeding portions to two of her children. In June 1950, she conveyed to appellant and Isaura the lot on which appellant resides. Appellant subsequently paid Jones $1.00 for a quitclaim deed, in the belief that his father had lost the property Antonia attempted to convey by failing to pay taxes.

The trial court held that appellant's deed from Jones was void, because it was based upon a double assessment of taxes, and that appellees had title to the property by virtue of their deed from Antonia. Alternatively, the trial court found that appellees had acquired title by adverse possession. Appellant contends that the trial court erred in all three holdings.

We affirm the trial court's holding that appellees acquired title by adverse possession. We do not consider the claims based upon the parties' respective titles. *C & F Realty Corp. v. Mershon*, 81 N.M. 169, 464 P.2d 899 (1969).

Under the relevant New Mexico statute, in order to establish title by adverse possession a person must establish: (1) a good faith claim of right under color of title; (2) possession that is actual, visible, exclusive, hostile, and continuous for ten years; and (3) payment of taxes. NMSA 1978, § 37–1–22. All elements must be proved by clear and convincing evidence. *Birtrong v. Coronado Bldg. Corp.*, 90 N.M. 670, 568 P.2d 196 (1977). If any one of the elements necessary to establish title to land by adverse possession is missing, the claimant will not obtain title. *Id.; Pan American Petroleum Corp. v. Candelaria*, 403 F.2d 351 (10th Cir.1968).

Appellant concedes that appellees' possession of the property from the time of Rosalia's death was adverse. However, he contends that Rosalia's initial possession of the subject property was permissive and, since appellees' adverse possession falls short of the required time period, appellees' claim must fail. Appellant also contends that because he regularly used a roadway traversing the tract in issue to reach his own residence, and maintained and improved the property, Rosalia's possession could not be deemed exclusive. We disagree with both contentions.

With respect to the first contention, appellant admits the trial court applied the clear and convincing standard of proof, but he apparently argues that Rosalia's possession must be presumed to have been permissive. *See Apodaca v. Hernandez,* 61 N.M. 449, 302 P.2d 177 (1956) (possession originating in cotenancy is presumptively permissive; where the original occupation of property is permissive, an adverse holding must be expressly declared and notice of such change brought to the attention of the owner); *accord Norgong v. Whitehead,* 225 Minn. 379, 31 N.W.2d 267 (1948) (existence of close family relationship between claimant and record owner of land creates inference that original possession by claimant was permissive and such possession will be presumed to continue as permissive rather than hostile until and unless contrary evidence is affirmatively shown). Alternatively, he argues that there was an insufficient showing of hostility, because he and Rosalia were brother and sister. *See Fehl v. Horst,* 256 Ore. 518, 474 P.2d 525 (1970) (where there is a close family relationship between the owner of property and claimant, courts have required a greater showing that possession was hostile or adverse). Finally, he argues that there was uncontroverted evidence of permission.

Appellant's reliance on a presumption of permissiveness is misplaced. Rosalia and appellant were not co-tenants, each of whom was entitled to consider the other's possession permissive. *See Apodaca v. Hernandez.*

Further, the evidence shows that they were not in a relationship that would support an inference of permissive possession. *Cf. Fehl v. Horst* (where a claimant had assumed the management and control of a building owned by his elderly mother-in-law, the court refused to consider the claimant's actions adverse while the owner was alive). However, even if such an inference arose solely from the relationship, there was sufficient evidence to rebut it.

Rosalia entered into possession of the subject property under a recorded deed in her own name, and it is undisputed that appellant was aware of it. By his own admission, Rosalia always treated and took care of the house and property as an owner. In fact, from 1951 to 1976 she mortgaged the property on eleven different occasions. It is also undisputed that the house was built for Rosalia by her father and that she lived in the house until her death in 1983. Additionally, with appellant's knowledge, Rosalia paid ad valorem taxes on the property, which were assessed in her name. It is difficult to imagine what more Rosalia could have done to establish hostile or adverse possession of the tract in issue.

Finally, Isaura testified that Rosalia moved onto the tract in issue without permission. Appellant's testimony on this issue was equivocal. Thus, the record does not contain uncontroverted evidence of permission. Acquiescence is not necessarily the same as permission. *Weldon v. Heron,* 78 N.M. 427, 432 P.2d 392 (1967). "On the contrary, there may be adverse possession where possession is with forbearance of the owner who knew of such possession and failed to prohibit it." *Id.* at 428, 432 P.2d at 393.

No New Mexico case addresses appellant's second contention, which is that his use of Rosalia's property precludes a finding of exclusivity. Nevertheless, other authorities have held that possession may be exclusive, notwithstanding that the land is subject to non-possessory rights, such as easements. *See Kouri v. Burnett,* 415 P.2d 963 (Okla.1966); 2 C.J.S. *Adverse Possession* § 58 (1972). The fact that another person uses the property by permission of claimant, or in subordination to her claim, does not necessarily preclude a finding of exclusiveness of possession. 2 C.J.S., *supra,* § 54. Possession need not be absolutely exclusive if it is of the kind expected of an owner under like circumstances. *See Grimstad v. Dordan,* 256 Or. 135, 471 P.2d 778 (1970).

Allowing a brother and sister-in-law to use a roadway across the tract to gain access to their residence is not an act inconsistent with the use an owner would make of the land. Rosalia's possession may be

438

considered exclusive even though others used the property with her permission.

■ Exclusive possession for purposes of establishing adverse possession means that the claimant exercises dominion and control for herself and not for another. *See* 7 R. Powell, *The Law of Real Property* § 1013(2)(d) (1987). Nevertheless, the claimant's actions must exclude the owner from exercising dominion and control. *Id.*

In reviewing the sufficiency of the evidence to support the trial court's finding of exclusiveness, the evidence must be viewed in favor of upholding the finding. *C & F Realty Corp. v. Mershon.* Because the evidence on the record supports an inference that Rosalia's possessory acts limited appellant to permissive use, the finding is supported by substantial evidence.

As to appellant's contention that he repaired, maintained, and improved the land, the evidence was conflicting concerning whether these actions were undertaken merely as gratuitous assistance to Rosalia, in subordination to her claim, or as a landowner in his own right and for his own benefit. Where evidence in an adverse possession claim is conflicting, and there is substantial evidence to support the trial

court's decision, that decision will not be set aside on appeal. *Smith v. Borradaile,* 30 N.M. 62, 227 P. 602 (1922).

■ In this case, a family member was in residence on the property for over thirty years under a warranty deed from appellant's own grantor and parent. With appellant's knowledge, she paid taxes on that property and otherwise dealt with the property as an owner. On these facts, appellant's use of a roadway and contributions towards repair and maintenance do not preclude a finding of exclusivity.

Accordingly, we affirm the judgment of the trial court. No costs are awarded. Appellees' request for attorney fees, being unsupported by statutory authority, is denied. *See Alber v. Nolle,* 98 N.M. 100, 645 P.2d 456 (Ct.App.1982).

IT IS SO ORDERED.

GARCIA and APODACA, JJ., concur.